UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

UNITED STATES OF AMERICA,

       Plaintiff,

v.                           Criminal No. 2:02-cr-00091-02

YOLANDA MONROE,

       Defendant.

MEMORANDUM OPINION AND ORDER

       Pending is (1) defendant Yolanda Monroe's Motion to Modify Restitution Obligation (ECF No. 476) and the government's response thereto (ECF No. 481) and (2) the government's Motion to Modify Order of Distribution of Restitution Funds (ECF No. 488), defendant Yolanda Monroe's response thereto (ECF No. 491), and the government's reply to defendant's response (ECF No. 492), which doubled as a "Status Report on Restitution Funds."

I.   Background

       On May 14, 2002, defendant Monroe pled guilty to one count of conspiracy to commit wire fraud via the internet, a conspiracy which she agreed generated over $175,000 charging victims $120 per fraudulent consultation.  See ECF Nos. 1, 10; see also ECF No. 108.  She was sentenced to 15 years of

1

imprisonment and three years of supervised release and ordered to pay, jointly and severally with her co-defendant, Louis Nomar, restitution totaling $175,000.00 pursuant to the Mandatory Victims Restitution Act ("MVRA") at 18 U.S.C. § 3663A. See ECF No. 27. Given the online, indirect nature of the conspiracy, victims proved practically hard to identify and even some identified victims proved difficult to locate. See ECF No. 108.

At the time of sentencing on August 12, 2002, the government possessed the phone numbers and/or payment card numbers of 1,463 victims but the names and addresses of only six of those victims. ECF No. 58. The sentencing Judge, the Honorable Charles Haden, II, allotted an additional 90 days to the probation officer to determine the names and addresses of the other 1,457 victims. See id. By October 11, 2002, the probation officer had identified 401 of the 1,463 victims. See ECF 58. Judge Haden, "in fairness," reduced defendants' restitution amount to $48,120.00, derived from multiplying the 401 identified victims by $120 apiece per respective fraudulent consultation, despite defendant Monroe's guilty plea agreement reflecting a much larger figure. See ECF Nos. 10, 58, 84, 108. Judge Haden stated:

> Given the cap of $175,000.00 contained in the plea
> agreement, the Court deems the Government to have made
> a prima facie case that this figure represents the
> total amount of loss and restitution due and owing . .
> . . In fairness . . . the court imposes the sum of
> $48,120.00 as restitution.

ECF No. 108 at 5. Judge Haden further stated that "[d]efendant
is given leave to move for modification of this figure if the
failure to locate named victims would result in the holding of
monies in trust for them at a later time." Id. Almost twenty
years later, defendant Monroe did so move. See ECF No. 476.

Defendants' restitution obligation expired after
twenty years pursuant to 18 U.S.C. § 3613(b) on October 17,
2023. See ECF No. 488. In total, defendant Monroe and her co-
defendant, with whom she was jointly and severally liable, made
payments totaling $44,755.45, of which defendant Monroe
contributed $40,055.45, while her co-defendant contributed
$4,700.00. Case Inquiry Report at 2 (generated on December 4,
2025). Victims who were readily located were paid out of that
money pro rata by the Clerk pursuant to Clerk Internal Controls.
See id. The pro rata nature of these distributions has left
outstanding balances even for those victims. Id. Some victims
proved unlocatable, and some others did not timely cash their
respective checks, leading to the current complication of
ultimate disbursement. Id.

As of today, the Clerk has attempted $17,571.17 in disbursements, $9,087.50 of which has come back due to bad addresses and/or untimely check redemption, leaving the sum of $8,483.67 as paid out to date. Case Inquiry Report at 27 (generated on December 4, 2025).

## II. <u>Discussion</u>

At bottom, because of the practical difficulty of locating and compensating identified victims of defendant Monroe's online scheme that took place over twenty years ago, $36,271.78 of undisbursed restitution funds are currently stagnating in trust. <u>Id.</u> Equally apportioning the $8,483.67 to defendant Monroe and her co-defendant, the remaining $36,271.78 consists of $35,813.62 contributed by defendant Monroe and $458.16 contributed by her co-defendant, whose minor portion will presumably be exhausted once a further distribution is made. The question is what to do with those remaining funds. As a preliminary matter, the parties agree that any outstanding balances owed to locatable victims[1] should be paid in full. <u>See</u> ECF No. 491 at 2; ECF No. 488 at 4-5. With respect to any funds

---

[1] The term "locatable victims" refers to victims for whom a current address is readily available. This includes deceased victims for whom a current address of an heir or estate representative is readily available, unless such heir or estate representative has since disclaimed their respective interest.

4

thereafter remaining, defendant Monroe would have the funds returned to her.  See ECF No. 476 at 12.  The government would have the funds go to the Crime Victims Fund.  See ECF 488 at 5. Five circuits have weighed in on the issue.

The MVRA mandates an imposition of restitution where, as here, the defendant has been convicted of "any offense" that is "against property . . . including any offense committed by fraud or deceit."  18 U.S.C. §3663A(c)(1)(A)(ii); see United States v. Ritchie, 858 F.3d 201, 209 (4th Cir. 2017).  In such case, "[n]otwithstanding any other provision of law," the sentencing court "shall order . . . that the defendant make restitution to the victim of the offense."  18 U.S.C. §3663A(a)(1).  The appropriate amount imposed is the "the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant."  18 U.S.C. § 3664(f)(1)(A); see United States v. Stone, 866 F.3d 219, 225–26 (4th Cir. 2017).

A victim is permitted to "at any time assign the victim's interest in restitution payments to the Crime Victims Fund in the Treasury without in any way impairing the obligation of the defendant to make such payments."  18 U.S.C. § 3664(g)(2).  Also, it is clear that "[n]o victim shall be

required to participate in any phase of a restitution order."
Id. § 3664(g)(1).

The Second and Ninth Circuits have held that it is
within the court's discretion to assign a victim's disclaimed
interest in restitution funds to the Crime Victims Fund in the
Treasury. See United States v. Johnson, 378 F.3d 230, 244-245
(2d Cir. 2004); United States v. Hankins, 858 F.3d 1273, 1281
(9th Cir. 2017) ("[W]e do not interpret the MVRA's silence
regarding redirection as a limit on the district court's power
to craft a solution that is consistent with the purposes of the
MVRA and the [Crime Victims Fund] and that fosters the
compensatory and punitive goals of the statute."). In addition,
the Eleventh Circuit has ruled that the defendant is not
entitled to the unclaimed portion. See United States v.
Williams, 5 F.4th 1295, 1308 (11th Cir. 2021) ("[E]ven if [the
victim] declines to accept her share of the restitution payment,
[the defendant] cannot keep [the unlawful] earnings for
himself.").[2] The Second Circuit explained that this result is

_____

[2] While the Eleventh Circuit did not explicitly reach the
holding that the court could redirect disclaimed restitution
funds to the Crime Victims Fund, it disagreed with the Tenth
Circuit's holding that restitution under the MVRA is only
mandatory if the victim agrees to receive payment. Williams, 5
F.4th at 1307. It further held that even if the victim declined
payment, the defendant could not keep the unlawfully generated
earnings for himself. Id. at 1308.

consistent with the MVRA's mandate of restitution combined with the dual purposes of restitution, those being compensatory and punitive.  See Johnson, 378 F.3d at 245.

The Seventh and Tenth Circuits do not agree with that analysis.  See United States v. Pawlinski, 374 F.3d 536 (7th Cir. 2004); United States v. Speakman, 594 F.3d 1165, 1177 (10th Cir. 2010).  The Seventh Circuit, in a terse 2004 opinion, held that a restitution order directing unclaimed restitution funds to the Crime Victims Fund was improper because "[a]n order of restitution under [the MVRA] . . . must go to the victims of the defendant's crimes, and the Crime Victims Fund is neither a victim of [the defendant] nor a representative of his victims." Pawlinski, 374 F.3d at 539.  The Pawlinski court declined to address specifics related to the practical effect of its holding, stating that "[w]hat happens to the money that the judge dispatched to the Crime Victims Fund will be an issue between Wisconsin, the U.S. Department of Justice, which administers the Fund, and possibly the U.S. Treasury as well." Pawlinski, 374 F.3d at 541 (internal citation omitted).

The Tenth Circuit in Speakman directly combated the Second Circuit's holding in Johnson, contending that (1) the MVRA does not mandate restitution where a victim disclaims their potential interest and (2) Tenth Circuit precedent that the

7

purpose of restitution is wholly compensatory differed from
Second Circuit precedent where it was deemed both compensatory
and punitive. <u>See</u> 594 F.3d at 1177. The Supreme Court, as the
Tenth Circuit itself recognized in a subsequent opinion, has
since noted that restitution is primarily compensatory but still
punitive. <u>Paroline v. United States</u>, 572 U.S. 434, 456 (2014)
("The primary goal of restitution is remedial or compensatory,
but it also serves punitive purposes.") (internal citations
omitted); <u>see</u> <u>United States v. Ferdman</u>, 779 F.3d 1129, 1132
(10th Cir. 2015) ("[T]he Supreme Court's statement regarding the
general nature of criminal restitution calls into question our
view that the MVRA lacks a penal element.").

        The Fourth Circuit recognizes the dual purpose of the
statute. <u>Ritchie</u>, 858 F.3d at 214; <u>Stone</u>, 866 F.3d at 226. In
<u>Ritchie</u>, the Fourth Circuit opined that "[a]t its core, the MVRA
requires offenders to restore property lost by their victims as
a result of the crime. Its goals are <u>both compensatory and penal</u>
. . . ." 858 F.3d at 214 (emphasis added); <u>see also</u> <u>United</u>
<u>States v. Newsome</u>, 322 F.3d 328, 340 (4th Cir. 2003) (quoting S.
Rep. No. 104-179, at 12 (1996)) ("'It is also necessary to
ensure that the offender realizes the damage caused by the
offense and pays the debt owed to the victim as well as to
society.'"). Indeed, the Supreme Court has erased any doubt as

8

to whether the MVRA possesses a punitive (as well as compensatory) spirit.  <u>Paroline</u>, 572 U.S. 434 at 456 (quoting <u>Pasquantino v. United States</u>, 544 U.S. 349, 365 (2005)) ("'The purpose of awarding restitution' under 18 U.S.C. § 3663A 'is . . . to mete out appropriate criminal punishment'").

As noted above, the mandatory nature of restitution under the central provision of the MVRA is evident.  18 U.S.C. § 3663A(a)(1); <u>see</u> <u>Johnson</u>, 378 F.3d at 244-245.  The statute states that "[n]otwithstanding any other provision of law . . . the court <u>shall</u> order . . . that the defendant make restitution to the victim of the offense."  18 U.S.C. § 3663A(a)(1) (emphasis added).  It is also true that "[n]o victim shall be required to participate in any phase of a restitution order."  18 U.S.C. § 3664(g)(1).  "To reconcile the mandatory nature of restitution with [allowed victim nonparticipation], the statute must admit some flexibility as to where restitution money goes if the victim disclaims participation."  <u>Hankins</u>, 858 F.3d at 1279.  And the statute already provides that "[a] victim may at any time assign the victim's interest in restitution payments to the Crime Victims Fund in the Treasury without in any way impairing the obligation of the defendant to make such payments."  18 U.S.C. § 3664(g)(2).  Thus, the court, by redirecting disclaimed interests in restitution to the Crime

9

Victims Fund, harmonizes these statutory provisions and "fosters the compensatory and punitive goals of the statute." Hankins, 858 F.3d at 1281; see Johnson, 378 F.3d at 244-246.

Holding otherwise, as the Seventh Circuit has done and as the Tenth Circuit has also done but with some subsequent doubt in view of Paroline, would be inconsistent with the mandatory nature of an order of restitution under the statute. It would also have the practical effect of allowing a defendant to retain the benefit of her fraudulently obtained funds -- an effect inconsistent with the punitive aspect of the statute articulated by the Supreme Court and, subsequently, the Fourth Circuit. Indeed, given that the amount defendant pled to generating from her fraudulent scheme is significantly more than the amount of restitution ultimately imposed and paid, defendant has already retained some measurable benefit here.

Further, defendant's contention that the leftover funds be returned to her is especially dubious. Judge Haden unambiguously imposed restitution in the amount of $48,120.00. ECF No. 108. Defendant argues that Judge Haden's extraneous statement that "[d]efendant is given leave to move for modification of this figure if the failure to locate named victims would result in the holding of monies in trust for them at a later time" rendered the imposed restitution amount unfixed

10

or otherwise liable to change freely.  See ECF No. 491 at 5-6.
This is not so.  The general rule is that a sentence imposing an
order of restitution is an unmodifiable final judgment unless
one of several enumerated statutory exceptions applies.  United
States v. Grant, 715 F.3d 552, 557 (4th Cir. 2013); see 18
U.S.C. § 3664(o); United States v. Bratton-Bey, 564 F. App'x 28,
29 (4th Cir. 2014).  Whether identified victims can ultimately
be located to effectuate payment is not contemplated by any of
the enumerated exceptions.

        Moreover, allowing the further search for victims
beyond the now twenty-plus years of searching is at least
impractical and at most a waste of judicial resources and the
resources of the Marshal.

        It is, accordingly, ORDERED that:

    (1)  Defendant's Motion to Modify Restitution Obligation
         (ECF No. 476) be, and hereby is, DENIED;

    (2)  The government's Motion to Modify Order of
         Distribution of Restitution Funds (ECF No. 488) be,
         and hereby is, GRANTED to the extent it seeks to
         disperse leftover restitution funds to the Crime
         Victims Fund;

    (3)  The Clerk ensure that all locatable victims are paid
         in full;

(4)    The Clerk, after the lapse of one year after paying

any outstanding balances owed to victims deemed

locatable, shall disperse all remaining uncashed and

unclaimed funds comprising the balance of the sum of

$36,271.78 to the Crime Victims Fund.

The Clerk is directed to transmit copies of this order

to all counsel of record and any unrepresented parties.

ENTER:  December 22, 2025


John T. Copenhaver, Jr.
Senior United States District Judge

12